UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | |
|---|---|
| JESSICA L. H.,[1] § <br> §<br> Plaintiff, §<br> §<br> v. §<br> §<br> KILOLO KIJAKAZI, §<br> Acting Commissioner of Social Security,[2] §<br> Defendant. § | Civil Action No. 6:20-cv-00065-H-BU |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF
THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Jessica Leshell H. seeks judicial review of a final adverse decision of the Commissioner of Social Security ("the Commissioner") pursuant to 42 U.S.C. § 405(g). Dkt. No. 1. Under Special Order No. 3-251 of this Court, this case was automatically referred for the determination of non-dispositive motions and the issuance of findings, conclusions, and recommendation of dispositive matters. *See* Dkt. No. 6. The undersigned granted Plaintiff leave to proceed in forma pauperis. Dkt. No. 7. The parties have not consented to proceed before a magistrate judge.

For the reasons explained below, the undersigned recommends that the Court remand the Commissioner's decision for further administrative proceedings.

---

[1] Due to concerns regarding the privacy of sensitive personal information available to the public through opinions in Social Security cases, Plaintiff is identified only by first name and last initial.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

## I. BACKGROUND

Plaintiff alleges that her disability began December 21, 2017. *See* Administrative Record, Dkt. No. 21-1 ("Tr.") at 49. Plaintiff applied for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income on April 3, 2018. *Id.* After her applications were initially denied on August 2, 2018, Plaintiff challenged the denial and requested a hearing before an Administrative Law Judge ("ALJ"). *Id.* That hearing was held on July 23, 2019, in Abilene, Texas with the ALJ sitting remotely in Fort Worth, Texas. Tr. 87-113.

At the time of the hearing, Plaintiff was 41 years old. Tr. 225. She graduated from high school and completed one year of college classes. Tr. 226. A vocational expert ("VE") testified that Plaintiff had past work experience as a mental retardation aide, social services supervisor, and corrections officer. Tr. 109.

The ALJ found that Plaintiff was not disabled and was not entitled to disability benefits. *See* Tr. 49-60 ("ALJ Decision"). At step one of the analysis, the ALJ found Plaintiff had not engaged in substantial gainful activity since December 21, 2017, the alleged disability onset date.[3] Tr. 51. At step two, the ALJ found the Plaintiff had several severe impairments including obesity, major depressive disorder, post-traumatic stress disorder (PTSD), agoraphobia, and borderline personality disorder. *Id*.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met the severity required in the Social Security Regulations. Tr. 52. Also

---

[3] As discussed further below, the Commissioner employs a five-step analysis in determining whether claimants are disabled under the Social Security Act.

during this step, the ALJ evaluated the severity of Plaintiff's mental impairments using the Psychiatric Review Technique ("PRT") and whether those impairments satisfy the criteria of listing 12.04, 12.06, and 12.15. Tr. 52. The ALJ evaluated the criteria's four areas and found the Plaintiff had mild or moderate limitations in all. Tr. 52-53. In the area of interacting with others, the ALJ found Plaintiff had a moderate limitation, noting Plaintiff's history of termination from jobs due in part to "a problem leaving her home and functioning effectively [in] a community environment." Tr. 53.

The ALJ also determined the Plaintiff had the residual functional capacity ("RFC") to perform a light work with the following limitation: "[T]he claimant can occasionally climb ramps and stairs, balance, stoop, kneel, and crouch. The claimant can never crawl or climb ladders, ropes, or scaffolds. The claimant can understand. remember, and carry out simple tasks with only occasional interaction with coworkers and supervisors, and no interaction with the public." Tr. 54.

The ALJ based his opinion on medical records, the Social Security Administration's ("SSA") examining and non-examining medical and mental health consultants, vocational expert testimony, and the Plaintiff's testimony. Tr. 54-59. At step four, the ALJ found the Plaintiff unable to perform any past relevant work. Tr. 58. The ALJ then considered the Plaintiff's age, education, her RFC, and the testimony of a vocational expert to determine that there were jobs in the national economy that exist in significant numbers that the Plaintiff can perform. Tr. 58-59. Accordingly, the ALJ determined that Plaintiff had not been under disability, as defined by the Social Security Act, for the period in question. Tr. 59.

Plaintiff appealed the ALJ's decision to the Appeals Council. Tr. 46-65. The Appeals Council denied Plaintiff's request for review on May 12, 2020, and Plaintiff timely filed this action in federal district court. *Id.*

## II. LEGAL STANDARDS

Judicial review of the Commissioner's decision to deny benefits is limited to determining whether that decision is supported by substantial evidence and whether the proper legal standards were applied to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *see also Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).

Substantial evidence means more than a scintilla, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000). While a reviewing court must scrutinize the administrative record to ascertain whether substantial evidence supports the Commissioner's findings, it may not reweigh the evidence, try issues de novo, or substitute its own judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (citing 42 U.S. § 405(g)). A reviewing court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

To be entitled to Social Security benefits, a claimant must show that he is disabled within the meaning of the Act. *Leggett v. Chater*, 67 F.3d 558, 563–64 (5th Cir. 1995); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A).

In evaluating a disability claim, the Commissioner has promulgated a five-step sequential process to determine whether: (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the Social Security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity. *See* 20 C.F.R. § 404.1520 (2017); *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007).

Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. Once the claimant satisfies his or her initial burden, the burden shifts to the Commissioner at step five to show that there is other gainful employment in the national economy that claimant is capable of performing. *Greenspan*, 38 F.3d at 236. If the Commissioner shows that other jobs are available to the claimant, the burden of proof shifts back to the claimant to rebut such a finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987); *see also* 20 C.F.R. § 404.1520(a)(4).

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557 (citing *Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989) (per curiam); *see also Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984)). If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id*. However, courts do not hold the ALJ to procedural perfection. *See Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) Instead, a court will only reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record and only if that failure prejudiced the claimant. *Id*. That is, only if the claimant's substantial rights have been affected. *See Audler*, 501 F.3d at 448. Put another way, the claimant "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728–29 (5th Cir. 1996).

On judicial appeal, a court is statutorily tasked with review of the Commissioner's final decision. 42 U.S.C. § 405(g). The Fifth Circuit held that the Commissioner's final decision includes Appeals Council's denial of a request for review, and as such, judicial review must also include review of the evidence submitted for the first time to the Appeals Council. *Higginbotham v. Barnhart*, 405 F. 3d 332, 336-37 (5th Cir. 2005).

### III.   ANALYSIS

Plaintiff challenges the ALJ's decision on the basis that the ALJ did not account for Plaintiff's agoraphobia and panic-disorder in the RFC. Dkt. No. 23 at 15. Plaintiff argues that while the ALJ acknowledged Plaintiff's documented problems leaving her home, the RFC limitation fails to account for those problems' functional limitations. *Id.* at 16.

Importantly, Plaintiff argues, citing Social Security Ruling (SSR) 96-8p, 1996 WL 374184, *1, the RFC is an assessment of a claimant's ability to function in a work-setting. *Id.* And Plaintiff points to "the consultive examination, the [medical] record, and [Plaintiff's] testimony" which "document her self-isolating behaviors and associated panic attacks when leaving her home." *Id*. (citing Tr. 57). Despite this evidence, Plaintiff argues, the ALJ failed to address Plaintiff's documented inability to leave her home. *Id.* at 18.

In response, the Commissioner argues that the ALJ did account for Plaintiff's credible mental limitations in the RFC by limiting her social interactions. Dkt. No. 24 at 2. The Commissioner argues that Plaintiff's limitations arise from subjective complaints, not consistent objective medical evidence. *Id.* at 4. The Commissioner asserts that the ALJ properly considered the medical evidence and found that those records "did not generally support the level of social phobia alleged by [Plaintiff]." *Id.* at 5 (citing Tr. 53). The Commissioner also asserts that the new evidence before the Appeals Council supported the ALJ's decision because the new medical evidence would not have changed the decision outcome without evidence of additional mental limitations. *Id.* at 10.

In her reply, Plaintiff argues that the ALJ did not properly consider relevant medical record evidence because the ALJ failed to analyze or even mention a "single report from [Plaintiff's] treating mental health professionals" Dkt. No. 25 at 3. Further, Plaintiff argues, the Commissioner's argument that the agency's consultative mental status evaluation supports the ALJ's RFC limitations ignores the same evaluation which found Plaintiff "severely anxious," diagnosed her with "severe PTSD with panic disorder and agoraphobia," and noted a "guarded" prognosis for improvement. *Id.* at 3. Finally, Plaintiff

argues that the Commissioner failed to demonstrate how Plaintiff's new evidence before the Appeals Council is immaterial. *Id.* at 4.

According to the Code of Federal Regulations § 416.920a, mental impairments are evaluated at step two using a special technique to determine whether the claimant has a medically determinable mental impairment and then the impairment is rated. 20 C.F.R. § 416.920a(a)-(b) West (2017). The ALJ must determine the functional limitation of the claimant in four areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and the ability to adapt or manage oneself. *Id.* at (c). The claimant is rated on a five-point scale including none, mild, moderate, marked, and extreme with extreme meaning the claimant is incapable of conducting any gainful activity. *Id.* at (c)(4). Generally, a rating of "none" or "mild" means the impairment or impairments is not severe and will not indicate "more than a minimal limitation [in a claimant's] ability to do basic work activities." *Id.* at (d)(1).

The ALJ will then assess all the relevant evidence in the case record and "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184, *5. The ALJ must base the RFC on objective medical evidence and is not required to make accommodations for self-reported symptoms that lack support. *See Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

The purpose of an RFC is to determine the most an individual can do despite their limitations. SSR 96-8P, 1996 WL 374184, at *1 (1996). To determine an individual's RFC, an ALJ will consider all evidence, and then determine what evidence is consistent, and if

8

that evidence is sufficient to determine disability. 20 C.F.R. § 404.1520b(a) (2017). The ALJ will also determine what evidence is incomplete or inconsistent and how to best evaluate and manage that evidence or whether to use that evidence at all. *Id.* at (b)-(c). An RFC must be based on all relevant evidence and consistent with both objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529, 416.920c (2017).

When evaluating symptoms of mental health impairments, subjective symptoms may create a medically determinable impairment if medically acceptable clinical diagnostic techniques show the existence of the symptoms alleged. 20 CFR § 404.1529(b). The ALJ also can draw reasonable inferences from the evidence, but must also remember that "presumptions, speculation, and supposition do not constitute evidence." *Ceman v. Colvin,* 4:15-CV-543-A, 2016 WL 1567489, *3 (N.D. Tex. Apr. 1, 2016).

Here, judicial review includes consideration of all evidence before the Appeals Council, meaning in this case, all evidence prior to March 31, 2020. *See Higginbotham*, 405 F. 3d at 336-37 Plaintiff's evidence shows clinical diagnoses and treatment for agoraphobia, presenting as an inability to leave the home, as consistent with Plaintiff's alleged symptoms and severity. Plaintiff's treating mental healthcare providers treated her agoraphobia throughout 2018, 2019, and early 2020, which presented as panic attacks induced by leaving her home and resulted in her inability to do so. Tr. 6, 18, 33, 67-68, 70-72, 73-74, 378, 426, 444. Due to those symptoms, Plaintiff's mental healthcare providers transitioned to in-home appointments and prescribed treatment that included desensitization exercises, such as stepping onto her front porch for five-minute sessions.

Tr. 67-68, 70-74. Plaintiff testified that her parole officer made similar accommodations, allowing her to check-in via telephone rather than in-person. Tr. 108.

Additionally, the SSA's psychological consultative examination by Pennissi P. Taylor, Ph.D., included a Mental Status Examination ("MSE"), and noted Plaintiff's "severe PTSD with panic disorder and agoraphobia," with a "guarded" prognosis for improvement. Tr. 419.

While the ALJ noted Plaintiff's agoraphobia and panic attacks when leaving her home were documented in the MSE and the state agency mental health consultant reports, the ALJ failed to analyze or mention Plaintiff's on-going treatment records from her treating mental healthcare providers. *See* Tr. 57-58. Likewise, although the RFC provides limitations for certain interpersonal interactions, it provides no limitation for Plaintiff's agoraphobia and anxiety-related symptoms—shown in the medical records, MSE, and hearing testimony as an inability to leave the home due to panic attacks—because the RFC requires Plaintiff to function in a work setting. Tr. 54. Although the Commissioner points to the ALJ's statement that he evaluated all relevant medical evidence (*See* Dkt. No. 24 at 3), such boilerplate language "does not constitute an explanation for rejecting a medical opinion." *Kneeland v. Berryhill*, 850 F.3d 749, 761 (5th Cir. 2017).

In short, there appears here to be medical documentation establishing isolating behaviors and panic attacks when leaving her home that would affect Plaintiff's ability to function in a work setting. *See Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (citing SSR 96-8p, 1996 WL 374184, *1 (S.S.A. 1996)). Despite that evidence, the ALJ did not address in his RFC how those limitations would affect Plaintiff's ability to function in a

work setting. *See* Tr. 57-58. Because the ALJ was required to consider the relevant medical information and failed to do so, this constitutes legal error.

Further, the undersigned cannot conclude that this error was harmless, that is, that the failure to address Plaintiff's manifested agoraphobia symptoms did not affect Plaintiff's substantial rights. *See Audler*, 501 F.3d at 448. Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error. *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006) (citing *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003)). "Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have [not] been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).

That the error may have caused harm became evident in step four, after the ALJ determined Plaintiff's RFC. At step four, the claimant bears the burden of showing that he cannot perform his past relevant work. *See Leggett*, 67 F.3d at 564. At step four an ALJ is permitted, but not required, to employ the services of a VE. 20 C.F.R. § 404.1560(b)(2) ("We may use the services of vocational experts or vocational specialists . . . to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity."). "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986)).

Here, the ALJ consulted a VE and posed, along with Plaintiff's attorney, multiple hypothetical limitations to determine their effect on workplace functionality. Tr. 110-11. The ALJ presented a hypothetical to the VE which asked him to consider an individual of

11

Plaintiff's age, education, and past work as characterized by the VE, with the limitations the ALJ ultimately included in the RFC. Tr. 110. The VE responded that such an individual could perform work sufficiently available in the national economy. Tr. 110-11. When the hypothetical was repeated but with limitations that more closely align with Plaintiff's documented agoraphobia symptoms, such as multiple work absences or an inability to remain at work due to panic attacks, the VE testified that such an individual could not perform any other work in the national economy. Tr. 111.

Based on the ALJ's questions to the VE and his subsequent decision, the undersigned is unable to determine whether and to what extent the ALJ adequately analyzed Plaintiff's problems leaving the home in determining her RFC. Proper inclusion of Plaintiff's panic attacks when leaving the home into the RFC could have resulted in a different outcome at step four, and thus the undersigned cannot conclude that this error is harmless.

Accordingly, the undersigned recommends that the hearing decision be reversed and remanded for further administrative proceedings. On remand, the undersigned recommends that "the interaction or cumulation of all of [Plaintiff's] mental and physical medical problems and impairments" be considered in the ALJ's determination. *Loza*, 219 F.3d 378, 399 (5th Cir. 2000).

For the foregoing reasons, the undersigned RECOMMENDS that the hearing decision be REMANDED. Because all parties have not consented to proceed before a United States Magistrate Judge, the undersigned directs the Clerk of Court to REASSIGN

this case to United States District Judge James Wesley Hendrix in accordance with normal procedures

## IV.  RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that the hearing decision be REVERSED and this case REMANDED to the Commissioner of Social Security for further proceedings consistent with these findings and conclusions as to the issue of panic attacks, agoraphobia, and Plaintiff's problems leaving the home. Because all parties have not consented to proceed before a United States Magistrate Judge, the undersigned directs the Clerk of Court to REASSIGN this case to United States District Judge James Wesley Hendrix in accordance with normal procedures.

## V.  RIGHT TO OBJECT

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific or sufficient. Failure to file written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except on grounds of

plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

ORDERED this 30th day of November, 2021.

_____
JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE